IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

DUSTIN LEE BARNETTE,
    Plaintiff,

vs.                                     Case No.: 3:19cv4743/MCR/EMT

LIEUTENANT P. TUCKER, et al.,
    Defendants.
_____/

## REPORT AND RECOMMENDATION

Plaintiff Dustin Lee Barnette ("Barnette") is an inmate of the Florida Department of Corrections proceeding pro se and in forma pauperis in this civil rights action. Presently before the court is Barnette's Second Amended Complaint (ECF No. 12).

The case was referred to the undersigned for the issuance of all preliminary orders and any recommendations to the district court regarding dispositive matters. *See* N.D. Fla. Loc. R. 72.2(C); *see also* 28 U.S.C. § 636(b)(1)(B); Fed. R. Civ. P. 72(b). Upon consideration of Barnette's pleadings, the undersigned concludes he has not stated a plausible constitutional claim against Defendant Nurse Kelly; therefore, his claims against Defendant Kelly should be dismissed.

I.     BACKGROUND

Barnette names six Defendants in his Second Amended Complaint, all of whom were working at Santa Rosa Correctional Institution at the time of the events giving rise to his claims:  Lieutenant P. Tucker, Sergeant M. Cade, Officer Cox, Officer Kuka, Nurse Kelly, and Officer J. Upton (Second Amended Complaint, ECF No. 12, at 1–3).[1]  Barnette asserts each Defendant was deliberately indifferent to his need for protection from a physical attack by his cellmate, Inmate Corey Chaney, in violation of the Eighth Amendment (*id.* at 6–10).  Barnette also appears to assert a claim of deliberate indifference to medical needs against Nurse Kelly (*id.* at 8).  Barnette seeks declaratory relief and compensatory damages (*id.* at 10).  He also includes a general prayer for relief (*id.*).

II.   STATUTORY SCREENING STANDARD

Because Barnette is a prisoner proceeding in forma pauperis, the court must dismiss this case if the court determines that the complaint fails to state a claim upon which relief may be granted.  *See* 28 U.S.C. § 1915(e)(2)(B)(ii); 28 U.S.C. § 1915A.  The statutory language "tracks the language of Federal Rule of Civil Procedure 12(b)(6)," therefore, dismissals for failure to state a claim are governed by the same

---

[1] The court refers to the page numbers automatically assigned by the court's electronic filing system, rather than the page numbers of the original documents.

standard as Rule 12(b)(6). *Mitchell v. Farcass*, 112 F.3d 1483, 1490 (11th Cir. 1997). The allegations of the complaint are taken as true and construed in the light most favorable to Barnette. *See Davis v. Monroe Cty. Bd. of Educ.*, 120 F.3d 1390, 1393 (11th Cir. 1997).

The court must consider the operative pleading (in this case, the Second Amended Complaint). The court will also consider allegations in Barnette's prior pleadings, to the extent those pleadings contain clarifying facts. Additionally, the court will consider other sources which courts ordinarily examine when ruling on a 12(b)(6) motion, in particular, documents attached to the Second Amended Complaint or incorporated therein by reference. *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322, 127 S. Ct. 2499, 168 L. Ed. 2d 179 (2007); *Saunders v. Duke*, 766 F.3d 1262, 1272 (11th Cir. 2014); *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997) ("[W]here the plaintiff refers to certain documents in the complaint and those documents are central to the plaintiff's claim, then the Court may consider the documents part of the pleadings for purposes of Rule 12(b)(6) dismissal . . . .").

To survive statutory screening under §§ 1915(e)(2)(B)(ii) and 1915A(b)(1), "a complaint must contain sufficient factual matter, accepted as true, to state a claim

to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) (quotation marks and citation omitted). A claim is plausible on its face where "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citation omitted). Plausibility means "more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (quotation marks and citation omitted).

The determination of whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679 (citation omitted). The court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* at 678 (quotation marks and citation omitted). And "bare assertions" that "amount to nothing more than a "formulaic recitation of the elements" of a claim "are conclusory and not entitled to be assumed true." *Id.* at 681 (quotation marks and citation omitted). Stated succinctly:

> Pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can

Case No.: 3:19cv4743/MCR/EMT

> provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

*Id.* at 679.

### III. BARNETTE'S FACTUAL ALLEGATIONS WITH RESPECT TO NURSE KELLY

Nurse Kelly dispensed morning medication to inmates in Barnette's dormitory on May 10, 2019 (Second Amended Complaint at 8). Officer Cox escorted Nurse Kelly while he dispensed medication (*id.*). As Nurse Kelly was dispensing medication to Barnette, Barnette told Kelly his cellmate had assaulted him multiple times the previous day, and he (Barnette) needed his injuries assessed (*id.*). Barnette also told Kelly he was in fear for his life and needed protection (*id.*). Nurse Kelly responded, "I'll be right back to look at those injuries" and left the dormitory (*id.*). Nurse Kelly did not return (First Amended Complaint at 9, ECF No. 9). At approximately 9:55 a.m., Barnette's cellmate physically assaulted him (Second Amended Complaint at 8). Approximately five (5) minutes later, security officers escorted Barnette to the medical department, where he was examined by Nurse Kelly (*see* Florida Department of Corrections Emergency Room Record, attached to Second Amended Complaint). Barnette complained of pain to his face (*id.*). Nurse

Kelly observed a 2.5-centimeter horizontal laceration to Barnette's right cheek under his eye, a 1x2 centimeter unapproximated laceration to Barnette's left eyebrow, mild swelling to Barnette's right eye with purple bruising, and swelling to the bridge of Barnette's nose (*id.*). Nurse Kelly notified Advanced Practice Registered Nurse (APRN) Fickling (*id.*). APRN Fickling sutured the laceration to Barnette's left eyebrow (*id.*). Barnette was discharged to confinement with instructions to access sick call if needed (*id.*).

## IV. DISCUSSION

"The Eighth Amendment imposes a duty on prison officials to take reasonable measures to guarantee the safety of the inmates." *Caldwell v. Warden, FCI Talladega*, 748 F.3d 1090, 1099 (11th Cir. 2014) (quoting *Farmer v. Brennan*, 511 U.S. 825, 832, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994)) (alterations and quotations omitted). "Having incarcerated 'persons [with] demonstrated proclivit[ies] for antisocial criminal, and often violent, conduct,' having stripped them of virtually every means of self-protection and foreclosed their access to outside aid, the government and its officials are not free to let the state of nature take its course." *Farmer*, 511 U.S. at 833 (citation omitted). Thus, it has long been recognized that "prison officials have a duty to protect prisoners from violence at the hands of other

prisoners." *Id.* (quotation and alteration omitted). However, not "every injury suffered by one prisoner at the hands of another . . . translates into constitutional liability for prison officials responsible for the victim's safety." *Id.* at 834; *see also Purcell v. Toombs Cty.*, 400 F.3d 1313, 1321 (11th Cir. 2005) ("[A] prison custodian is not the guarantor of a prisoner's safety." (quotation omitted)).

A prison official violates the Eighth Amendment "when a substantial risk of serious harm, of which the official is subjectively aware, exists and the official does not respond reasonably to the risk." *Carter v. Galloway*, 352 F.3d 1346, 1349 (internal quotation marks omitted) (alterations adopted) (emphasis added); *see also Farmer*, 511 U.S. at 828 ("A prison official's 'deliberate indifference' to a substantial risk of serious harm to an inmate violates the Eighth Amendment."). To survive statutory screening on a deliberate indifference failure-to-protect claim, a plaintiff must allege facts which plausibly suggest (1) a substantial risk of serious harm; (2) the defendant's deliberate indifference to that risk; and (3) a causal connection between the defendant's conduct and the Eighth Amendment violation. *See Brooks v. Warden*, 800 F.3d 1295, 1301 (11th Cir. 2015).

Here Barnette admits Nurse Kelly was accompanied by a security officer, Officer Cox, when Barnette reported he had been attacked the previous day and

requested medical treatment and protection. It was objectively reasonable for Nurse Kelly to respond to Barnette's request for a medical assessment (i.e., "I'll be right back to look at those injuries") and defer to security staff to respond to Barnette's request for protection from his cellmate. This is especially so since Barnette does not allege any facts which suggest it was clear to Nurse Kelly that deferring to security staff would likely cause Barnette significant harm.[2] Barnette's allegations thus fail to state a plausible failure-to-protect claim against Nurse Kelly.

Barnette's allegations also fail to state a plausible claim of deliberate indifference to medical needs, to the extent he asserts one. Stating a claim under the Eighth Amendment requires satisfying two minima (from which the case law has ultimately derived four requirements). First, there must be, objectively speaking, conduct by public officials "sufficiently serious" to constitute a cruel or unusual deprivation—one "denying 'the minimal civilized measure of life's necessities.'" *Wilson v. Seiter*, 501 U.S. 294, 298, 111 S. Ct. 2321, 115 L. Ed. 2d 271 (1991)

---

[2] The law encourages non-medical security and administrative personnel at jails and prisons to defer to the professional medical judgments of the physicians and nurses treating the prisoners in their care without fear of liability for doing so, so long as there was no obvious need for intervention or subjective knowledge that adequate care would not be provided. *See Berry v. Peterman*, 604 F.3d 435, 440 (7th Cir. 2010); *see also, e.g., Williams v. Limestone Cty. Ala.*, 198 F. App'x 893 (11th Cir. 2006) (unpublished but recognized as persuasive authority. It logically follows that the reverse is true.

(quoting *Rhodes v. Chapman*, 452 U.S. 337, 347, 101 S. Ct. 2392, 69 L. Ed. 2d 59 (1981)). Second, there must be a subjective intent by the public officials involved to use the sufficiently serious deprivation in order to punish. *See Wilson*, 501 U.S. at 300 ("The source of the intent requirement is not the predilections of this Court, but the Eighth Amendment itself, which bans only cruel and unusual punishment. If the pain inflicted is not formally meted out *as punishment* by the statute or the sentencing judge, some mental element must be attributed to the inflicting officer before it can qualify." (emphasis in original)).

In the context of denial of medical care, each of these minima has been more specifically described as encompassing two subsidiary requirements. To show an objectively serious deprivation, it is necessary to demonstrate, first, an objectively "serious medical need[ ]," *Estelle v. Gamble*, 429 U.S. 97, 104, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976), one that, if left unattended, "pos[es] a substantial risk of serious harm," *Farmer*, 511 U.S. at 834. A serious medical need is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Farrow v. West*, 320 F.3d 1235, 1243 (11th Cir. 2003). Second, it is necessary to demonstrate that the response made by the public official to that need was poor

enough to constitute "an unnecessary and wanton infliction of pain," and not merely accidental inadequacy, "negligen[ce] in diagnosi[s] or treat[ment]," or even "[m]edical malpractice" actionable under state law. *Estelle*, 429 U.S. at 105–06. Similarly, to show the required subjective intent to punish, a plaintiff must demonstrate that the public official acted with an attitude of "deliberate indifference," *id.* at 105, which is in turn defined as requiring two separate things: "aware[ness] of facts from which the inference could be drawn that a substantial risk of serious harm exists and . . . draw[ing of] the inference," *Farmer*, 511 U.S. at 837. Ultimately, there are thus four requirements: an objectively serious need, an objectively insufficient response to that need, subjective awareness of facts signaling the need, and an actual inference of required action from those facts. *See Taylor v. Adams*, 221 F.3d 1254, 1258 (11th Cir. 2000).

Here, Barnette alleges he told Nurse Kelly, while Kelly was dispensing morning medications to inmates in the dormitory, that he had been assaulted multiple time the previous day and needed his injuries assessed. Barnette alleges Nurse Kelly told him he would "be right back" to assess Barnette's injuries but never returned. These facts do not suggest deliberate indifference on Kelly's part. At most, Nurse Kelly's failure to return suggests negligence. Furthermore, when Barnette's

cellmate attacked him later that morning, Nurse Kelly promptly provided Barnette with medical treatment for his injuries. Barnette's allegations fail to state a plausible claim of deliberate indifference against Nurse Kelly.

## V.   CONCLUSION

Barnette's factual allegations fail to state a plausible Eighth Amendment claim against Nurse Kelly under either a failure-to-protect theory or a deliberate-indifference-to-medical-needs theory. Therefore, Barnette's claims against Defendant Kelly should be dismissed pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

Accordingly, it is respectfully **RECOMMENDED**:

1.     That Plaintiff's Eighth Amendment claims against Defendant Nurse Kelly be **DISMISSED WITH PREJUDICE** for failure to state a claim upon which relief may be granted, pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1);

2.     That this case be recommitted to the undersigned for further proceedings on Plaintiff's Eighth Amendment claims against the remaining Defendants.

At Pensacola, Florida, this 31<u>st</u> day of March 2020.

<u>/s/ Elizabeth M. Timothy</u>
**ELIZABETH M. TIMOTHY**
**CHIEF UNITED STATES MAGISTRATE JUDGE**

**<u>NOTICE TO THE PARTIES</u>**

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof. Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control. A copy of objections shall be served upon all other parties. If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions. See 11th Cir. Rule 3-1; 28 U.S.C. § 636.**

Case No.: 3:19cv4743/MCR/EMT